IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SSHI, LLC, d.b.a D R HORTON, | ) | |
| | ) | No. 41271-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | UNPUBLISHED OPINION |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| In re: SSHI, LLC, DBA D R HORTON, | ) | |
| | ) | |
| Docket No. 23 W0008 | ) | |
| Citation & Notice No. 317972062 | ) | |

COONEY, A.C.J. — Maximiliano Petraca was crushed by the shovel of a backhoe while working at a construction site. The general contractor of the construction site was SSHI, LLC. Steve Ruhnke Construction, a subcontractor for SSHI, employed Mr. Petraca. The backhoe incident led to SSHI being cited for violating two provisions of the WAC's safety standards for construction work. SSHI appealed the citations to the Board of Industrial Insurance Appeals (Board). An industrial appeals judge (IAJ) issued a proposed decision and order affirming the citations following an evidentiary hearing.

SSHI petitioned for review, and the Board affirmed. SSHI then appealed to the superior court, which also affirmed.

SSHI appeals, arguing that a different standard for knowledge of a violative condition should apply to general contractors than that applied to subcontractors. It also contends that one of the safety standards did not apply because the backhoe was not in operation within the meaning of the code, and that substantial evidence does not support the Board's finding that SSHI had constructive knowledge of the violations. We disagree with SSHI's arguments and affirm.

## BACKGROUND

SSHI was the general contractor of Rainier Ridge, a large housing development project in Puyallup, Washington. SSHI subcontracted the construction work for Rainier Ridge to Ruhnke Construction, among other subcontractors. SSHI had "superintendents [who] would perform daily walks while they [were] out on the jobsite" and would "watch over and oversee all the operations happening in the field." Clerk's Papers (CP) at 1547-48. SSHI typically had five full-time superintendents and two assistant superintendents at the jobsite.

On November 9, 2022, Mr. Petraca, a Ruhnke Construction employee, was operating a backhoe[1] and using a 20-to-30-pound post pounder to install posts for caution

_____

[1] A backhoe is "a machine with a bucket on the front and . . . an outrigger or digger on the back for digging ditches." CP at 1412.

tape. Mr. Petraca was operating the backhoe, apparently with the post pounder in the cab of the backhoe. At some point, Mr. Petraca exited the backhoe cab, walked to and from a nearby parked car, and then appeared to reach into the cab of the backhoe. As he reached into the cab, the bucket of the backhoe suddenly swung around and pinned Mr. Petraca against the backhoe. Mr. Petraca later died of his injuries. The incident was captured by a security camera.

The Department of Labor and Industries (Department) initiated an investigation. The investigation revealed Mr. Petraca was attempting to retrieve the post pounder from the cab of the backhoe when the post pounder fell or dropped onto the pedal that activated the backhoe's shovel. It was determined the backhoe was working properly and the engine was running at the time of the incident because the engine also operates the hydraulic system that moves the shovel.

As a result of the incident, the Department cited SSHI for violating WAC 296-155-77100(3)(d), prohibiting a worker from being within the range of the backhoe shovel's swing radius during operation or movement of the shovel, and WAC 296-155-77100(3)(m), prohibiting tools from being left on the floor of an excavation machine. Both violations are considered serious because they can lead to serious injury or death.

SSHI appealed the citations to the Board. An evidentiary hearing was held before an IAJ. Prior to the hearing, SSHI moved to admit the deposition testimony of Terry Walley. SSHI argued Mr. Walley's deposition "provides the history and policy basis for

3

[Division of Occupational Safety and Health (DOSH)] Directive 27.00 which the Department expects its compliance staff to follow." CP at 828. The IAJ denied SSHI's motion because "the history and development" of DOSH Directive 27.00 "has no legal relevance." CP at 125. It noted the "directive has not been adopted as a formal regulation" and only "provides application guidance in a question and answer format." CP at 125.

Numerous witnesses testified at the evidentiary hearing and the recording of the incident was admitted. Richard Medlen, a compliance safety and health inspector with the Department, testified that he did not believe Ruhnke Construction could establish the affirmative defense of employee misconduct to the violations. He testified the backhoe was running at the time of the incident and the post pounder was left in the cab. Mr. Medlen also testified that he followed DOSH Directive 27.00 in assessing whether SSHI, as the general contractor, should be cited for the safety violations. A copy of DOSH Directive 27.00 was admitted. DOSH Directive 27.00 establishes guidelines for "DOSH compliance and consultation staff when assessing an upper-tier contractor's compliance with the Washington Industrial Safety and Health Act (WISHA)." CP at 1722. DOSH Directive 27.00 provides "interpretation of appropriate application of [WISHA]" to "general contractor[s]" and "upper-tier subcontractor[s]." CP at 1722.

George Whiting, the quality control manager for SSHI, testified that "four to five" SSHI superintendents and a "site foreman" for Ruhnke Construction were assigned to the

Rainier Ridge project on the date of the incident. CP at 1411. Mr. Whiting stated the recording of the incident showed a "[v]ery active construction site." CP at 1412. Numerous photographs of the backhoe, construction site, and the site of the incident were admitted through Mr. Whiting. Four of the photographs depict the post pounder resting on the pedal that controls the backhoe's shovel. Tony Burke, director of construction for SSHI, testified the post pounder was visible in the cab from 20 to 30 feet away.

At the conclusion of the evidentiary hearing, the IAJ issued a proposed decision and order affirming the violations. For purposes of WAC 296-155-77100(3)(d), the IAJ found the backhoe was in "operation" because "the engine that activated the hydraulic system was running." CP at 118. The IAJ found the backhoe was "on or during operation because its engine was running," and therefore "met the requirement for the application of the specific standards described in WAC 296-155-77100(3)[(d)]." CP at 118. The IAJ also found SSHI "knew or through the exercise of reasonable diligence, could have known of the violations" because the infractions were in "plain view." CP at 117. Relatedly, the IAJ found SSHI "had the opportunity and power to readily observe Mr. Petrarca's work in a conspicuous location." CP at 119.

SSHI petitioned for review and the Board affirmed. SSHI appealed to the superior court, which affirmed the Board's order. SSHI timely appeals to this court.

No. 41271-7-III
*SSHI v. Dep't of Lab. & Indus.*

ANALYSIS

WHETHER A GENERAL CONTRACTOR IS SUBJECT TO THE SAME KNOWLEDGE REQUIREMENT AS A SUBCONTRACTOR

SSHI argues that a different standard for proving knowledge of a violative condition should apply to general contractors than that applied to subcontractors. We disagree.

In Washington, general contractors have a nondelegable specific duty to ensure compliance with all WISHA regulations. *Stute v. P.B.M.C. Inc.*, 114 Wn.2d 454, 463-64, 788 P.2d 545 (1990); RCW 49.17.060(2). As a matter of policy, per se liability is imposed on general contractors for WISHA violations because of their "per se control over the workplace." *Id.* A WISHA violation by a subcontractor is therefore chargeable to both the subcontractor and the general contractor because the general contractor is "the primary employer" whose supervisory authority puts it "in the best position to ensure compliance with safety regulations." *Id.* at 463; *see also Millican v. N.A. Degerstrom, Inc.*, 177 Wn. App. 881, 893, 313 P.3d 1215 (2013).

SSHI argues that it had a lower level of responsibility as general contractor and less control over the day-to-day activities of employees than the subcontractor, Ruhnke Construction, who directly employed Mr. Petraca. It contends the test for constructive knowledge should be different for general contractors. We disagree with SSHI. The standard for knowledge is the same for general contractors and subcontractors alike.

6

In its brief, SSHI complains that it "was placed in the same shoes of its subcontractor even though it did not directly control the work." Opening Br. of Appellant at 54. It argues that this court should look to federal cases interpreting the Occupation Safety and Health Act of 1970 (OSHA) and determine that "the duty of care for the general contractor is less than the duty of care a subcontractor owes to its own employees." Opening Br. of Appellant at 40. We decline SSHI's invitation to look to federal authority.

A general contractor owes a "'specific duty'" to all employees on a job site to "'comply with rules, regulations, and orders promulgated under [WISHA].'" *Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 735-36, 452 P.3d 1205 (2019) (internal quotation marks omitted) (quoting RCW 49.17.060(2)); *see also Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 122-23, 52 P.3d 472 (2002). "A general contractor *always* owes this duty under WISHA—no analysis of whether the general contractor retained control is necessary." *Id.* at 736. SSHI's arguments to the contrary, and its request that we rely on federal cases interpreting OSHA[2] and conclude that general contractors are subject to a lesser duty of care, are unavailing. Washington law is well settled; general contractors

---

[2] *Shimmick Const. Co. v. Dep't of Lab. & Indus.*, 12 Wn. App. 2d 770, 778, 460 P.3d 192 (2020) ("In interpreting WISHA, we may look to federal decisions that interpret WISHA's federal analogue, the Occupational Safety and Health Act of 1970 (OSHA), but we will not resort to federal case law when Washington law provides controlling precedent." (footnote omitted).

have a nondelegable duty to ensure compliance with all WISHA regulations and are subject to per se liability for such violations.

To the extent SSHI contends the citation should not be issued because the subcontractor chose to forego the affirmative defense of unpreventable employee misconduct, such an argument fails. First, contrary to SSHI's contention that Mr. Medlen "testified that Ruhnke Construction had established the elements of employee misconduct," the record reflects that Mr. Medlen testified that he *did not* find that Ruhnke Construction could establish employee misconduct. Opening Br. of Appellant at 50. Moreover, SSHI does not explain why it could not assert the affirmative defense of unpreventable employee misconduct itself. *See* RCW 49.17.120(5).

SSHI also argues that the proposed decision and order "constitutes the application of strict liability as no explanation is provided to support the conclusion that [SSHI's] safety plan failed." Opening Br. of Appellant at 51. We disagree with SSHI because, as the Department points out, it merely needed to prove SSHI knew or should have known of the violative conditions through the exercise of reasonable diligence. *Potelco, Inc. v. Dep't of Lab. & Indus.*, 191 Wn. App. 9, 34, 361 P.3d 767 (2015).

Finally, SSHI argues the IAJ erred in denying its motion to admit Mr. Walley's CR 30(b)(6) deposition testimony. We review a presiding officer's evidentiary rulings for abuse of discretion. *Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 104, 187 P.3d 243 (2008).

Here, the IAJ excluded Mr. Walley's CR 30(b)(6) deposition testimony under

ER 401, ruling that testimony regarding the history and development of DOSH Directive

27.00 "has no legal relevance to this appeal" as it is "not a definitive legal statement of

the requirements expected of general contractors." CP at 125. The IAJ noted that DOSH

Directive 27.00 is not a formal regulation but rather a directive that "has not been drafted

in precise terms" and provides only "application guidance in a question and answer

format." CP at 125; *see also In re Exxel Pacific*, No. 96 W182, 1998 WL 718040, at *6

(Wash. Bd. Indus. Ins. Appeals July 6, 1998) ("[W]e cannot adopt [policy] as a definitive

legal statement of the requirements of general contractors."); *J.E. Dunn Nw., Inc. v. Dep't*

*of Lab. & Indus.*, 139 Wn. App. 35, 52, 156 P.3d 250 (2007) ("Policy statements are

'advisory only.'"). The IAJ did not abuse its discretion in excluding Mr. Walley's

deposition testimony. Indeed, why and how DOSH Directive 27.00 was developed has

no legal relevance as it is not a regulation with any force of law.

APPLICABILITY OF WAC 296-155-77100(3)(d) AND WHETHER SUBSTANTIAL
EVIDENCE SUPPORTS THE BOARD'S FINDING THAT RUHNKE CONSTRUCTION AND
SSHI HAD KNOWLEDGE OF THE VIOLATIONS.

Turning to the merits, SSHI argues WAC 296-155-77100(3)(d) did not apply and

that neither it nor Ruhnke Construction had actual or constructive knowledge of the

safety violations. We disagree with both contentions.

To prove SSHI committed a serious violation, the Department must show: (1) "the

cited standard applies;" (2) the employer failed to meet the standard; (3) "employees

9

were exposed to, or had access to, the violative condition;" (4) the employer knew or should have known, through the exercise of reasonable diligence, of the violative condition; and (5) there is a substantial probability that serious bodily injury or death could result from the violative condition. *Wash. Cedar & Supply Co. v. Dep't of Lab. & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2003); RCW 49.17.180(6).

SSHI was cited for serious violations of WAC 296-155-77100(3)(d) and WAC 296-155-77100(3)(m). WAC 296-155-77100(3)(d) states, "All persons must keep away from the range of the [excavation machine] shovel's swing and must not be permitted to stand back of the shovel or in line with the swing of the dipper during operation or moving of shovel." WAC 296-155-77100(3)(m) states workers "must not leave tools on the [excavation machine] cab floor."

*Application of WAC 296-155-77100(3)(d)*

SSHI first argues that, as a matter of law, WAC 296-155-77100(3)(d) did not apply. It argues that the IAJ erred in determining that the backhoe was running and therefore operating within the meaning of the regulation.

"We construe WISHA statutes and regulations liberally to achieve their purpose of providing safe working conditions for workers in Washington." *Frank Coluccio Constr. Co. v. Dep't of Lab. & Indus.*, 181 Wn. App. 25, 36, 329 P.3d 91 (2014); *see also* RCW 49.17.010. We give substantial weight to an agency's interpretation of regulations within its area of expertise. *Wash. Cedar & Supply Co., Inc. v. Dep't of Lab. & Indus.*, 137 Wn.

App. 592, 598, 154 P.3d 287 (2007).  Thus, we will uphold the agency's interpretation of a regulation "if it reflects a plausible construction of the statutory language and is not contrary to the legislature's intent and purpose."  *Id.*

Here, the IAJ interpreted "during operation or moving of the shovel" to mean "[t]he engine that activated the hydraulic system was running."  CP at 118.  It noted, "No distinction was made between a stationary excavation machine, with its internal combustion engine running but not moving, and a moving excavation machine."  CP at 118.  It therefore found that "[t]he backhoe was on or during operation because its engine was running" and WAC 296-155-77100(3)(d) therefore applied.  CP at 118.  The IAJ's interpretation of the regulation was reasonable, and it correctly determined the cited safety standard applied.

The backhoe's shovel could only move because the engine was running.  The shovel moved, meaning the machine was "in operation," and Mr. Petraca was prohibited from being within the shovel's swing radius.  Furthermore, interpreting "in operation" to mean the engine that activates the hydraulic system is running protects workers from being injured by the shovel of the backhoe.  Thus, because the backhoe was "in operation," and Mr. Petraca was within the shovel's swing radius, WAC 296-155-77100(3)(d) applied.

*Knowledge of Violative Conditions*

SSHI next argues the Board's findings that it and Ruhnke Construction had knowledge of the violative conditions are not supported by substantial evidence.

When analyzing a WISHA appeal, we review the Board's decision based on the record before it. *Erection Co. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 201, 248 P.3d 1085 (2011). If the Board's findings are supported by substantial evidence, they are conclusive. *Id.* at 202; RCW 49.17.150(1). "Evidence is substantial if it is enough to convince a fair-minded person of the truth of the stated premise." *Shimmick Constr. Co.*, 12 Wn. App. 2d at 778. We will not reweigh the evidence on appeal. *Potelco, Inc. v. Dep't of Lab. & Indus.*, 194 Wn. App. 428, 434, 377 P.3d 251 (2016). We construe the evidence in the light most favorable to the party who prevailed at the administrative hearing, here, the Department. *Frank Coluccio Constr.*, 181 Wn. App. at 35.

The knowledge element may be proved by evidence of actual or constructive knowledge. *See* RCW 49.17.180(7). An employer has constructive knowledge of a violation if it is "readily observable or in a conspicuous location in the area of the employer's crews." *Pro-Active Home Builders, Inc. v. Dep't of Lab. & Indus.*, 7 Wn. App. 2d 10, 18, 465 P.3d 375 (2018). The Department may show constructive knowledge "through evidence that a violation was in plain view." *Potelco*, 194 Wn. App. at 439.

The Board found that SSHI had "the opportunity and power to readily observe Mr. Petraca's actions that occurred in plain view on a busy street within the construction site." CP at 40. Further, it found, "[SSHI] had constructive knowledge of the serious violations of safety standards requiring all persons to keep away from the range of a backhoe shovel's swing during operation or moving of the shovel and to not leave tools on the cab floor." CP at 41. Relatedly, the Board made a finding that SSHI "knew or, through the exercise of reasonable diligence, could have known of the violations." CP at 41. These findings are supported by substantial evidence.

Testimony at the hearing demonstrated that the backhoe was running at the time of the incident and a post pounder was in the backhoe's cab. Moreover, photographs taken during the investigation showed that the post pounder was visible from outside of the swing radius of the backhoe. SSHI's director of construction, Mr. Burke, testified the post pounder could be seen in the cab from 20-to-30 feet away. Finally, the incident occurred at an active worksite on a busy street and, as evidenced by the video recording of the incident, anyone could have observed Mr. Petraca standing in the backhoe shovel's swing radius. This evidence supports the Board's findings that the violations were in plain view and that SSHI therefore had constructive knowledge of them.

SSHI points to the Board's recent decision in *In re Acropolis Construction*, claiming that case "held that a subcontractor violation, even if it is in plain view, does not establish a *Stute* citation against the general contractor." Opening Br. of Appellant at 57;

13

No. 41271-7-III
*SSHI v. Dep't of Lab. & Indus.*

*see also In re Acropolis Constr.*, No. 23 W1214, 2024 WL 5336676 (Wash. Bd. Indus.

Ins. Appeals Dec. 16, 2024). *Acropolis* is materially distinguishable.

In *Acropolis*, the Board vacated citations issued to Acropolis, a subcontractor,

because the safety violations occurred on a Saturday, not a scheduled workday, by an

employee who was suspended. 2024 WL 5336676, at *3-5. Thus, the Board determined

that Acropolis did not have knowledge of the violations because it "had no reason to

inspect the work area, to anticipate hazards" on a non-workday. *Id.* at *2. Though the

violations were in plain view, "employers can't be expected to exercise reasonable

diligence to make sure safety rules are being followed on non-work days." *Id.*

In contrast to *Acropolis*, here, the safety violation occurred on a scheduled

workday during which SSHI *was* expected to exercise reasonable diligence to ensure

compliance with all WISHA regulations and to observe those violations occurring in

plain view. The Board's reasoning in *Acropolis* is inapplicable to these facts.

SSHI argues the plain view doctrine should not be applied because there was no

substantive evidence that the violations were readily observable and conspicuous. As

explained above, this argument fails. Substantial evidence supports the Board's findings

that the violations were readily observable by SSHI.

Finally, SSHI contends that "even if either employer were present to observe the

tragedy, there was nothing that either employer could have reasonably done to prevent

the incident from occurring." Opening Br. of Appellant at 61. However, had SSHI or

14

No. 41271-7-III
*SSHI v. Dep't of Lab. & Indus.*

Ruhnke Construction observed the post pounder on the floor of the cab, either one could have removed it. Similarly, Mr. Petraca could have been removed from the backhoe's swing radius while it was running or the backhoe could have been turned off. Had SSHI and Ruhnke Construction exercised reasonable diligence to observe any one of these violations, this tragedy could have been avoided. The fact that neither SSHI nor Ruhnke Construction noticed the violations does not mean they were not readily observable or preventable.

WAC 296-155-77100(3)(d) applies, and substantial evidence supports the Board's findings that SSHI had constructive knowledge of the violations.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, A.C.J.

WE CONCUR:

Murphy, J.

Hill, J.

15